KERN *et al. v.* LEWIS.

*(Supreme Court, Special Term, Broome County.* February 9, 1889.)

NEGOTIABLE INSTRUMENTS—DAYS OF GRACE—PRIVATE BANKERS.

Laws N. Y. 1857, c. 416, § 2, dispensing with days of grace on all checks or bills of exchange drawn on any bank "or individual banker carrying on banking business under the act to authorize the business of banking," applies only to banks and individual bankers doing business under the act of April 18, 1838, (Laws N. Y. 1838, c. 260,) entitled "An act to authorize the business of banking," and the statutes supplementary thereto and amendatory thereof, and does not apply to a private banker who exercises in his business no more than the privileges common to all.

On exceptions to an order denying defendant's motion for a nonsuit.

Action by Lambert B. Kern and De Wayne E. Benjamin, as assignees of Edward B. Parsons, against Richard G. Lewis, to recover upon his indorsement of a check made by Leman Calkins, and payable to the order of the defendant. Among other defenses set up in the answer, the defendant alleged that he did not receive any notice of the dishonor or notice of the protest of the check, and that such check was never legally protested. The case was tried before the court and a jury, January, 1886, in Madison county, and resulted in a verdict in favor of the plaintiff for $160.89. At the close of the evidence the defendant moved for a nonsuit, upon the ground, among others, that the alleged protest of the check in suit was ineffectual to charge the indorser thereon. The motion was denied, and the defendant excepted.

*H. C. Miner,* for plaintiffs. *Irving H. Palmer,* for defendant.

MARTIN, J. On the 11th day of July, 1881, Leman Calkins made and delivered to the defendant a check or bill of exchange which was as follows: "DE RUYTER, N. Y., July 11, 1881. E. B. Parsons & Co.'s Bank of De Ruyter: Fourteen days after date pay to R. G. Lewis or order one hundred and twenty-six dollars. LEMAN CALKINS." The plaintiffs' assignor was doing business, as a private banker, at De Ruyter, N. Y., under the name or style of "E. B. Parsons & Co.'s Bank of De Ruyter." After this check or bill was given to the defendant, and before it became due, the defendant indorsed it in blank, and procured it to be discounted by said assignor. The plaintiffs' assignor, in discounting it, relied upon the responsibility of the defendant as such indorser, and not upon the responsibility of the maker or drawer, who was insolvent, and had no funds in the hands of the assignor with which to pay such check or draft. The agreement or understanding between the plaintiffs' assignor and the defendant was to the effect that such check or bill was discounted in reliance upon the responsibility of the defendant's indorsement, and not upon the responsibility of the maker or drawer. On July 25, 1881, 14 days after the date of the check or bill, it was presented for payment, and, the maker having no funds with which to pay the same, it was protested for non-payment, and notice of such non-payment and protest was served upon the defendant by mail. It will be observed that the check was presented, protested, and notice thereof given on the day when it became due, if no days of grace were allowed. There is no claim that it was presented or protested at any other time, nor that the defendant is liable unless he was properly charged, as such indorser, by such protest and notice.

An important question in this case is whether this instrument could be

properly protested on that day, so as to bind the defendant as indorser thereon. Therefore, without examining or passing upon any question as to the relations existing between the defendant and plaintiffs' assignor, or the liabilities arising therefrom, if such check or bill was properly presented and protested, we will first consider the question of the sufficiency of the presentment and protest relied upon by the plaintiffs to charge the defendant. There is no claim or pretense on the part of the plaintiffs that the presentment and protest proved were sufficient, under the rule as it existed at common law.

It is substantially conceded that, unless the common-law rule has been changed by statute, the recovery in this action cannot be upheld. The plaintiffs contend that the rule has been changed; and that, by virtue of the statute by which such change was wrought, their assignor was authorized to present and protest such instrument on the day named for its payment, without days of grace. The statute relied upon declares that "all checks, bills of exchange, or drafts appearing on their face to have been drawn upon any bank, or upon any banking association or individual banker, carrying on banking business under the act to authorize the business of banking, which are on their face payable on any specified day, or in any number of days after the date or sight thereof, shall be deemed due and payable on the date mentioned for the payment of the same, without any days of grace being allowed; and it shall not be necessary to protest the same for non-acceptance." Laws 1857, c. 416, § 2. That this statute has effected a change in the law as to days of grace upon checks, bills, or drafts drawn upon a bank, banking association, or individual banker, when payable on any specified day, or any number of days after date or sight, there can be no doubt; but the difficulty in this case arises in determining whether the plaintiffs' assignor was an "individual banker," and thus within its provisions. It will be observed that this statute applies only to instruments drawn upon a bank, banking association, "or individual banker, carrying on banking business under the act to authorize the business of banking." On the trial the plaintiffs' assignor testified that he was not at that time an individual banker, carrying on the banking business under the act to authorize the business of banking in this state. But the plaintiffs' contention is that any person who is engaged in the business of banking, whether under the provisions of the statute or otherwise, is an "individual banker," and protected by the provisions of the statute under consideration. I do not think so. When this act was passed the general banking law of this state, relating both to banking associations and individual bankers, consisted of a statute passed April 18, 1838, and the statutes supplementary thereto and amendatory thereof. The statute of 1838 was entitled "An act to authorize the business of banking." Laws 1838, c. 260. Hence, it is quite obvious, I think, that, when the legislature employed the words "or individual banker, carrying on banking business under the act to authorize the business of banking," it intended to refer only to those persons who were individual bankers under the general banking law, which was thus entitled. Moreover, in the same year that the statute we are considering was passed, the legislature passed another act which was in effect supplementary to the general banking acts, wherein the terms "banking association" and "individual banker" were defined as applying to such "banking associations" and "individual bankers" as were and might be organized under the act of April 18, 1838, and the several amendments thereto. Laws 1857, c. 189, § 10. In *People* v. *Doty*, 80 N. Y. 225, the term "individual banker" was considered, and the various banking acts expressive of the legislative intent in the use of that term collated; and in that case it was held that the term "individual banker" applied to one who had availed himself of the banking statutes of the state, and become empowered to do banking business thereunder, and that it did not apply to a private banker who exercised in his business no more than the rights and privileges common to all.

It seems to me that the explicit language of the statute, the legislative and judicial expressions as to the intended meaning of the term "individual banker," all concur in leading one to the conclusion that the statute of 1857 (chapter 416, § 2) was not intended to apply to private bankers, but only to "individual bankers" who were doing business under and in pursuance of the provisions of the general banking laws of the state. Nor are the cases of *Perkins* v. *Smith*, 41 Hun, 47, and *Spaulding* v. *Kelly*, 43 Hun, 301, in conflict with this conclusion. An examination of those cases discloses that the statute there considered and the statute of 1857 were totally unlike. The statute considered in those cases referred to both private and individual bankers; and it was held that the distinction between a private banker and an individual banker pointed out by the court of appeals in the *Doty Case* existed. They are, therefore, authority against, rather than in favor of, the plaintiffs' contention. These considerations lead me to the conclusion that the statute of 1857 does not apply to checks or bills drawn upon a private banker; that the plaintiffs' assignor was only such, and not an individual banker, within the provisions of that statute; that the check in suit was not properly presented or protested, as to the time of its presentation and protest; and that the defendant was never charged as an indorser thereon. If correct in this conclusion, it follows that the court erred in declining to nonsuit the plaintiffs on the ground that such protest was ineffectual to charge the defendant as indorser. For this error a new trial must be granted. It is therefore unnecessary to examine the other questions in the case. New trial granted, with costs to abide the event.